Argued and submitted May 12, at Pendleton, Oregon, reversed and remanded for new trial on revocation of acceptance claim only November 8, 1989, reconsideration denied February 9, petition for review denied March 27, 1990 (309 Or 522)

# YOUNG,
*Appellant,*

*v.*

# HESSEL TRACTOR & EQUIPMENT CO.,
*Respondent.*

## (CV 86-727; CA A46574)

782 P2d 164

W. Eugene Hallman, Pendleton, argued the cause for appellant. With him on the briefs was Mautz Hallman, Pendleton.

Lindsey H. Hughes, Portland, argued the cause for respondent. With her on the brief were William A. Davis and Hallmark, Keating & Abbott, P.C., Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

This is an action by a purchaser of logging equipment for breach of the warranty of merchantability and to revoke his acceptance of the equipment.[1] The trial court refused to submit to the jury one of plaintiff's theories concerning revocation of acceptance. The jury returned a verdict against plaintiff on the warranty claim. Plaintiff's several assignments of error challenge the trial court's ruling withdrawing the revocation of acceptance theory from the jury.

In March, 1985, plaintiff contracted to purchase from defendant a feller-buncher to shear trees in plaintiff's logging business. The feller-buncher consisted of a Hitachi excavator with a Vulcan head. The contract was signed on a John Deere Co. industrial equipment purchase order form.[2] The contract disclaimed all warranties, except the warranty explicitly provided by the sales contract, and expressly disclaimed the implied warranties of merchantability and fitness. The warranty disclaimer clause states:

> "The Warranty on the reverse side of this contract and the following applies where permitted by law. Neither seller * * * nor the manufacturer makes any other representations or warranties, express or implied (AND EXPRESSLY DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS) or has any obligations to the Purchaser except as provided on the reverse side."

The sales contract also limited remedies for breach of warranty. The exclusive remedy clause explicitly excluded the remedies of incidental and consequential damages and lost profits in particular:

> "G.  REMEDIES EXCLUSIVE.
>
> > "The only remedies the purchaser has in connection with the breach of performance of any warranty on John Deere equipment are those set forth above. In no event will the dealer, John Deere, or any company affiliated

---

[1] This is a companion case to *C.I.T. Group/Equipment Financing, Inc. v. Young*, 99 Or App 270, 782 P2d 169.

[2] Plaintiff contends that, because the contract warranty limitations expressly refer to John Deere, plaintiff is not bound by the limitations in his contractual relationship with defendant. The argument is without merit. The court expressly found that defendant provided the express warranty. Accordingly, the limitations were also provided by defendant.

with John Deere be liable for incidental or consequential damages or injuries including, but not limited to, loss of profits, rental of substitute equipment or other commercial loss."

The only warranty in the contract was a limited warranty against defects in the equipment for 12 months or 1500 hours with an exclusive remedy of repair and replacement for any defect in material or workmanship:

"A.   WHAT IS WARRANTED.

"* * * * *

"1.   Equipment Warranty. All parts of John Deere industrial equipment * * * which are defective in materials or workmanship as delivered to purchaser will be repaired or replaced, as John Deere elects without charge for parts or labor if a defect appears within 12 months or 1500 hours of use whichever occurs first, from the date of delivery of the equipment to the original purchaser."

On June 1, plaintiff and defendant signed a separate one-year repair warranty for the Hitachi machine.

Plaintiff took delivery of the Hitachi machine in April, 1985, and of the Vulcan head in May. After less than a month of use, plaintiff began to have serious problems. Defendant made numerous repairs and authorized plaintiff to make repairs. In August, 1985, defendant agreed to have the Vulcan head rebuilt by the manufacturer and loaned plaintiff a Morbark head that also turned out to have problems. In April, 1986, defendant supplied a used Ronen head that did not work either. In early fall, 1986, after more than a year of continuing unsuccessful attempts at repair and after the limited warranty expired, defendant stopped repairing the machine. In October, 1986, plaintiff returned the machine to defendant, saying that he was revoking acceptance.

On defendant's motion, after all of the evidence had been presented, the trial court removed from the jury's consideration plaintiff's theory that, because defendant's exclusive contractual remedy of repair and replacement had failed of its essential purpose, the other Uniform Commercial Code remedies were reinstated under ORS 72.7190(2). Plaintiff assigns as error the trial court's grant of that motion.

■ ■    Plaintiff concedes that, under the exclusive remedy provisions of the contract, he would not be entitled to the remedy of revocation of acceptance. He contends that, after the exclusive contractual remedy failed, his statutory remedies were restored.[3] ORS 72.7190 provides:

> "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in the Uniform Commercial Code."

If plaintiff could prove that the limited remedy failed of its essential purpose, then revocation of acceptance would become available as one of his remedies.[4]

---

[3] Plaintiff argues that the failure of essential purpose theory restores both the implied warranty of merchantability and his revocation of acceptance remedy. He misunderstands the purpose of ORS 72.7190, which only restores remedies and does not reinstate a properly excluded warranty. Under the Uniform Commercial Code, warranty disclaimers and limitation of remedy clauses have separate functions:

> "A disclaimer clause is a device used to control the seller's liability by reducing the number of situations in which the seller can be in breach. A remedy limitation or exclusion, on the other hand, restricts the remedies available to one or both parties once a breach is established." White and Summers, *Uniform Commercial Code* 12-11 (2nd Edition, 1980).

The two types of clauses are governed by different sets of rules:

> "Disclaimer clauses are authorized by Section 2-316, which also establishes most of the operative rules in regard to such clauses. Limitations of remedy clauses, on the other hand, are authorized by Section 2-719, which establishes the operative rules for such clauses. When a disclaimer is coupled with a limited express warranty, the disclaimer's validity is tested under the first set of rules, and the limited express warranty is tested under the second set of rules. In these situations, unless the claimant can invalidate both provisions, the surviving provision can sometimes remain a roadblock to complete recovery." Wallach, *Law of Sales* 11-50 (1981).

ORS 72.7190(2) can restore full remedies under the UCC, but only ORS 72.3160 can invalidate a warranty disclaimer and restore warranties. *See also* Special Project, "Article Two Warranties in Commercial Transactions: An Update," 72 Cornell L Rev 1159, 1289 (1985). Plaintiff does not argue that the disclaimer of an implied warranty of merchantability is invalid under ORS 72.3160, so the warranty disclaimer remains in effect.

[4] ORS 72.7190(1)(a) specifically allows parties to a contract to limit the buyer's remedies to repair and replacement. If such a limited remedy proves inadequate, relief from that limitation is provided by ORS 72.7190(2). *Comment 1* to ORS 72.7190 states, in relevant part:

> "[I]t is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within ORS 72.1010 to 72.7250 they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract. * * * [U]nder subsection (2), where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general

■■ To prove failure of essential purpose of a repair and replacement remedy, the buyer must first show that the seller was either unwilling or unable to repair. *See Arkwright-Boston Mfgrs Mut. v. Westinghouse Elec.,* 844 F2d 1174, 1179 (5th Cir 1988). Defendant argues that not every failure to repair causes a failure of essential purpose. If the jury finds that a buyer limited his remedies in a sales contract and then lost the substantial value of the bargain when the limited remedy failed, the remedy has failed of its essential purpose. *See Comment 1* to ORS 72.7190 n 3, *supra.* During trial, plaintiff put on evidence to show that defendant could not repair the equipment, so that the jury could have found that the warranty failed of its essential purpose.

■ Once plaintiff has proved to the jury that he lost the benefit of his bargain because his limited remedy was not minimally adequate, then the revocation of acceptance remedy is available. Revocation of acceptance is defined in ORS 72.6080:

> "(1) The buyer may revoke acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to the buyer if the buyer has accepted it:
>
> "(a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
>
> "(b) Without discovery of such nonconformity if the acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances."

The first requirement is a "nonconformity." Under ORS 72.1060(2), "[g]oods * * * are 'conforming' or conform to the contract when they are in accordance with the obligations under the contract." To prove a nonconformity, a buyer must show that a seller failed to meet an obligation under the contract. Defendant's only obligation under this contract, other than the obligation to deliver the specified equipment timely, was the express one-year warranty against defects. The

---

remedy provisions of ORS 72.1010 to 72.7250." *Oregon's Uniform Commercial Code* 115 (Legislative Counsel Committee, 1962).

If the seller's limited express warranty against defects in materials or workmanship fails of its essential purpose, then the buyer is no longer limited to the remedy of repair and replacement for a breach of that warranty. ORS 72.7190 restores all remedies under the UCC for that breach, including revocation of acceptance.

exclusive remedy under that warranty was to repair and replace defective parts for one year. No other warranties were available, so no other nonconformity based on breach of warranty was possible.

If the jury finds that the equipment was defective and that defendant was unable to repair the defect or replace the defective parts, then the express warranty to repair or replace parts was breached. If the jury finds that the defect was a substantial nonconformity under the contract, that plaintiff reasonably assumed that the nonconformity would be cured and that it was not seasonably cured, then the jury may conclude that plaintiff was entitled to revocation of acceptance under ORS 72.6080.

Defendant points to our holding in *Crume v. Ford Motor Co.*, 60 Or App 224, 653 P2d 564 (1982), to support his argument that the failure of essential purpose provision does not apply to a revocation of acceptance claim. In *Crume,* the *dealer* disclaimed *all* warranties and the *manufacturer* provided an exclusive repair and replacement warranty. We held:

> "If the limited remedy provided by the *manufacturer* failed of its essential purpose, that does not render the goods nonconforming under plaintiffs' contract with the *dealer,* absent a warranty of merchantability." 60 Or App at 228. (Emphasis supplied.)

Because the dealer there disclaimed *all* warranties and the vehicle conformed to the contract, there was no possible nonconformity under the dealer's obligations in the contract that could serve as a basis for revoking acceptance. We rejected the methods by which other courts have found a way to avoid an unfair result by allowing the buyer to revoke acceptance after the dealer had disclaimed *all* warranties. 60 Or App at 227-28.[5] Nothing in *Crume* suggests that a failure of essential purpose

---

[5] We cited four cases in which the seller had disclaimed all warranties and the manufacturer had given a limited warranty of repair and replacement of defective parts. All of them involved consumer vehicle purchases. In three, the court allowed a revocation of acceptance against the seller, finding the seller liable for a substantial impairment of value to the buyer. *See, e.g., Seekings v. GMC of Tucson, Inc.,* 130 Ariz 596, 638 P2d 210 (1982). In the fourth case, the court allowed a revocation of acceptance against the manufacturer who made the warranty, a result that we rejected in *Clark v. Ford Motor Co.,* 46 Or App 521, 612 P2d 316 (1980).

of a limited warranty provided by a *dealer* would not restore other remedies as provided by ORS 72.6190(2).[6]

■    During the trial, plaintiff put on evidence that defendant could not repair the equipment under the limited remedy, and that he lost the substantial value of the bargain so that the limited remedy had failed of its essential purpose. Had the jury found such a failure, then revocation of acceptance would have become available as a remedy. The trial court's failure to permit the jury to decide whether defendant's warranty had failed of its essential purpose prevented plaintiff from presenting his theory that he had revoked acceptance of the goods.[7]

Reversed and remanded for new trial on the revocation of acceptance claim only.[8]

---

[6] In other jurisdictions, buyers have proved failure of essential purpose of their limited remedies and have received damages for breach of the express limited warranty, not confined to the remedy of repair and replacement. *See, e.g., Roberts v. Morgensen Motors,* 135 Ariz 162, 659 P2d 1307 (1982); *Caterpillar Tractor Co. v. Waterson,* 13 Ark App 77, 679 SW 2d 814 (1984).

[7] Because the trial court effectively withdrew plaintiff's revocation of acceptance theory from the jury's consideration, it did not instruct on that theory. We decide only that plaintiff is entitled to present the case to the jury on that basis and have the jury instructed on it. The parties do not argue, and we do not decide, whether the requested jury instructions are a correct statement of the law, nor do we decide whether the trial court erred concerning the form of the verdict.

[8] Defendant prevailed in the trial on the only theory submitted to the jury. Its cross-assignment of error that the trial court erred in submitting the claim of lost profits to the jury for insufficiency of the evidence is moot, and we do not discuss it.